UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN LAMAR HOPKINS, <br><br> Plaintiff, <br><br> v. <br><br> CONTRA COSTA COUNTY, et al., <br><br> Defendants. | Case No. 12-0813 WHO (PR) <br><br> **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION** |

**INTRODUCTION**

Plaintiff Kevin Lamar Hopkins alleges that defendants, employees of Contra Costa County (the "County"), were deliberately indifferent to his medical needs in violation of the Eighth Amendment.[1]  Defendants moved for summary judgment.  (Docket No. 74.) While that motion was pending, Hopkins moved to file an amended complaint alleging entirely different claims, which was denied.  He then moved for reconsideration of the denial.  For the reasons stated, defendants' motion for summary judgment is GRANTED and Hopkins's motion for reconsideration is DENIED.

///

---

[1] All other claims were dismissed without prejudice for Hopkins's failure to exhaust administrative remedies.  (*See* Docket No. 61.)

# BACKGROUND

**1. Hopkins's Medical Treatment**

There are no material facts in dispute. Hopkins was arrested and booked by the Contra Costa County Sheriff's Office on December 18, 2010, for a parole violation, and released on December 22, 2010. (Weaver Decl. ¶ 3, Ex. D.) He was detained again on December 23, 2010, until December 28, 2012, when he was transferred to state prison. (*Id.* at ¶¶ 4 & 5, Exs. B & C.) He was re-booked at the County's Martinez Detention Facility ("MDF") on April 25, 2011, on a removal order from Avenal State Prison. (*Id.* at ¶ 6, Ex. D.) Hopkins remained in the Sheriff's custody until September 12, 2012. (*Id.*)

While at MDF on May 17, 2011, Hopkins was seen by Dr. Brett Curtis. (McBride Decl. ¶ 5.) Hopkins was complaining of back pain from a car accident he had suffered three years prior. (*Id.*) His medical records indicated that Hopkins had an MRI on September 29, 2010, before he was incarcerated in the County; the MRI showed that he had degenerative disc disease, bulging discs, and moderate to severe neural foraminal narrowing of his lumbosacral spine. (*Id.*) The medical records from November 17, 2010, prior to his incarceration in the County, showed that Hopkins was prescribed Neurontin for pain and instructed to begin daily activity. (*Id.*) Dr. Curtis prescribed Neurontin for Hopkin's back pain on May 26, 2011. (*Id.* at ¶ 6.) Thereafter, Hopkins continued to receive various pain medications while incarcerated at MDF: Neurontin (5/26/11 to 3/10/12), Tramadol (7/7/11 to 8/6/11; 9/23/11 to 1/13/12), Hydrocodone/Acetaminophen (8/24/11 to 9/21/11; 3/16/12 to 3/24/12); Morphine (12/9/11 to 1/8/12); Morphine SR (12/13/11 to 4/11/12); and Nabumetone (12/27/11 to 7/25/12). (*Id.* at ¶ 14.)

On September 27, 2011, Hopkins was seen for a follow-up hernia surgery and for his back pain. (McBride Decl. ¶ 7.) On November 8, 2011, Hopkins received an MRI of his back at his request. (*Id.* at ¶ 8.) Hopkins had an appointment on November 19, 2011, to discuss his MRI results but missed the appointment for unknown reasons. (*Id.* at ¶ 9.) On December 9, 2011, Hopkins met with Dr. Curtis to discuss the MRI results which were the same as in 2010; Hopkins had mild to moderate multi-level degenerative disc disease,

bulging discs and osteophytes.  (*Id*. at ¶ 10.)

On December 22, 2011, Hopkins submitted two medical requests, which defendant Samuel Rosales answered on January 19, 2012.  (Rosales Decl. ¶5, Ex. A.)[2]  Rosales, who provides administrative oversight of detention health operations for the Department of Health Services for Contra Costa County, stated that Hopkins's complaints were being reviewed by medical staff and that a meeting would be scheduled to address his concerns.  (*Id.*)  Rosales explained that he had been out of the office on vacation and therefore not able to respond sooner.  (*Id.*)

On January 20, 2012, Hopkins was educated regarding back exercises.  (McBride Decl. ¶ 11.)  On February 3, 2012, Dr. Curtis referred Hopkins to a spine clinic.  (*Id*.)  On February 7, 2012, Hopkins met with defendant Rosales and a medical team to discuss his treatment, after which he reported being "relatively satisfied" with his treatment since he had an appointment with the spine clinic.  (*Id*. at ¶ 12, Ex. C.)  Hopkins was seen in the spine clinic on April 4, 2012, and prescribed exercise and a back brace.  (*Id*. at ¶ 13.)  Other than pain medication, exercise and a back brace, no other treatment was indicated for Hopkins's back condition.  (*Id*. at ¶ 15.)

Hopkins alleges that he did not receive timely results from the MRI taken on November 8, 2011, and that defendants failed to provide a doctor to discuss the MRI results with him or refer him to a specialist to treat his pain as of the date he signed the instant complaint on February 10, 2012.[3]  (*Id.* at 6.)  He claims their deliberate indifference violated to his Eighth Amendment right to adequate medical care.  (*Id.* at 5.)

**2.  Potentially Responsible Defendant**

As defendants argue, because this action is now limited to the deliberate

---

[2] Rosales serves as the liaison between the Sheriff's Office and Health services regarding the provision of health services in the County's detention facilities.  (Rosales Decl. ¶ 3.)  He does not have a medical degree or any medical training and does not provide any medical care or advice to County inmates.  (*Id.* at ¶ 4.)

[3] The Court previsously found that only these claims were properly exhausted.  (*See* Docket No. 61 at 7.)

3

1    indifference claim discussed above, the only remaining defendant is Samuel Rosales, the
2    Health Care Administrator for Detention Health Services of Contra Costa County.  The
3    other defendants should be dismissed. (Docket No. 74 at 1.)  That result is consistent with
4    the facts and with Hopkins's pleading.
5    　　　Medical treatment at the County detention facilities is provided by the Department
6    of Health Services, a separate department from the Sheriff's Office.  (Livingston Decl. ¶
7    4.)  Sheriff Livingston and his employees have no authority or control over health services
8    provided to inmates.  (*Id.*)
9    　　　Moreover, Sheriff Livingston, Deputy Norvell, Sgt. Baker and Ms. Tao were all
10   named by Hopkins with respect to unexhausted claims relating to his lack of safety in jail.
11   *See supra* at 1, fn. 1.  Hopkins identified "Defendants of the Contra Costa County Sheriff's
12   Medical Department names as DOE Defendants and Medical Director Sam Rosales and
13   their agents" as the responsible parties for the deliberate indifference claim.  (Compl. at 6.)
14   As it is clear that only Rosales is identified and named as a defendant with respect to the
15   lone claim remaining in this action, all other defendants are DISMISSED.
16   　　　Defendants assert that Rosales is entitled to summary judgment because (i) the
17   undisputed facts show that Hopkins received timely and effective medical care, (ii) there is
18   no supervisor liability, and (iii) because he is entitled to qualified immunity.  (Docket No.
19   74 at 8-10.)
20   　　　　　　　　　　　　　　　　**DISCUSSION**
21   A.    **Standard of Review**
22   　　　Summary judgment is proper where the pleadings, discovery and affidavits
23   demonstrate that there is "no genuine dispute as to any material fact and [that] the movant
24   is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those
25   which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
26   248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a
27   reasonable jury to return a verdict for the nonmoving party.  *Id.*
28   　　　The party moving for summary judgment bears the initial burden of identifying

4

those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). The Court is concerned only with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 (internal quotations omitted).

B.  **Analysis**

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical needs and the nature of the defendant's response to those needs. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (overruled on other grounds, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)).

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (equating standard with that of

criminal recklessness). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Id.* Consequently, in order for deliberate indifference to be established, there must exist both a purposeful act or failure to act on the part of the defendant and harm resulting therefrom. *See McGuckin*, 974 F.2d at 1060.

In order to prevail on a claim of deliberate indifference to medical needs, a plaintiff must establish that the course of treatment the doctors chose was "medically unacceptable under the circumstances" and that they embarked on this course in "conscious disregard of an excessive risk to [plaintiff's] health." *See Toguchi v. Chung*, 391 F.3d 1051, 1058-60 (9th Cir. 2004). A claim of mere negligence related to medical problems, or a difference of opinion between a prisoner patient and a medical doctor, is not enough to make out a violation of the Eighth Amendment. *Id.*; *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

The facts in this case do not show a genuine dispute as to any material fact relating to Hopkins's claims of deliberate indifference regarding his MRI and referral to a specialist for his back pain. It is undisputed that Hopkins received continuous pain medication to manage his back pain throughout his incarceration at MDF. *See supra* at 2. After his meeting with his medical team and defendant Rosales on February 7, 2012, Hopkins was reported to be "relatively satisfied" with his treatment, particularly as he was scheduled to visit the spine clinic. *Id.* at 3.

In opposition, Hopkins asserts that he was not aware of his MRI results until he received copies of his medical records by court order on or about December 8, 2011. (Opp. at 2.)[4] There is no indication that the failure to provide him with the MRI results sooner was the fault of Rosales. It appears that Rosales first became aware of Hopkins's

---

[4] Hopkins's opposition actually reads "December 8, 2012" instead of December 8, 2011. However, one can tell from the context of that date within the sequence of events that Hopkins was describing, as well as from his allegations in the complaint itself, that he received the MRI results in 2011 and not 2012, and that the use of "2012" in his opposition was an inadvertent mistake.

6

medical concerns when he reviewed Hopkins's medical requests dated December 22, 2011. *See supra* at 2. Rosales's response to Hopkins on January 19, 2012, stated that medical staff was reviewing his complaints and that they would be scheduling a meeting to discuss his concerns. *Id*. Meanwhile, Dr. Curtis had already agreed to refer Hopkins to the spine clinic on February 3, 2012. *Id.* Just three weeks after his letter to Hopkins, Rosales met with Hopkins and his medical team on February 7, 2012, at which time Hopkins expressed satisfaction with his current treatment plan. *Id*.

Hopkins's claim does not survive summary judgment even if one takes as true his factual assertions. Even if it can be said that he received the results of his MRI unreasonably late, there is no evidence that Rosales was responsible for the delay. Furthermore, there is no evidence that Hopkins suffered any harm in the delay because the MRI results showed that his pre-existing back condition had not changed or worsened. Hopkins was also referred to the spine clinic, where it was determined that exercise and a back brace were the appropriate course of treatment. It appears that Rosales showed the appropriate care for Hopkins's medical needs by arranging the meeting with the medical team and Hopkins. There is certainly no deliberate indifference shown on this record.

To the extent that Hopkins attempts to hold defendant Rosales liable as a supervisor, there is no merit to this claim. A supervisor may be liable under section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Henry A. v. Willden*, 678 F.3d 991, 1003-04 (9th Cir. 2012) (citing *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)). As discussed above, there was no constitutional deprivation nor was there any evidence that Rosales was personally involved in the alleged delay in Hopkins obtaining his MRI results. *See supra* at 6.

Hopkins has not shown a genuine dispute as to any material fact regarding his claim that Rosales acted with deliberate indifference. Accordingly, the motion for summary

7

judgment is GRANTED.[5]

C. **Motion to Amend the Complaint and for Reconsideration**

In his opposition, Hopkins attempts to raise new claims regarding the prescription of high blood pressure medication, the use of crutches and an orthopedic devise. (Opp. at 3.) He also moves to amend the complaint with claims of retaliation and harassment. (*Id.* at 4.) He further seeks reconsideration of the Court's earlier order denying leave to amend.

Hopkins may not raise new allegations in his opposition or by amendment without an explanation why he failed to raise them earlier. This case has been pending since February 21, 2012. Even if the Court construes the opposition and/or the motion for reconsideration as a request to file a supplemental pleading, the Court would deny it because matters newly alleged in a supplemental complaint must have some relation to the claim(s) set forth in the original pleading. *See Keith v. Volpe*, 858 F.2d 467, 474 (9th Cir. 1988). A supplemental pleading cannot be used to introduce separate, distinct and new causes of action that should be the subject of a separate suit. *See Planned Parenthood of So. Arizona v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997). Accordingly, Hopkins's motion to amend the complaint to allege new claims is again DENIED, and for the same reason, his motion for reconsideration of motion for leave to file an amended complaint (Docket No. 100) is DENIED.

# CONCLUSION

Accordingly, defendants' motion for summary judgment (Docket No. 74) is GRANTED in favor of Rosales. The claims against all other defendants are DISMISSED. The Clerk shall terminate them from this action.

---

[5] Because the Court has found there was no constitutional deprivation, it is not necessary to reach defendant's qualified immunity argument.

8

1   The Clerk shall terminate Docket Nos. 74 and 100, enter judgment in favor
2   defendant Rosales, and close the file.
3   **IT IS SO ORDERED.**
4   **Dated:** March 13, 2014



WILLIAM H. ORRICK
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN LAMAR HOPKINS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CONTRA COSTA COUNTY et al,<br><br>　　　　Defendant._____/ | Case Number: CV12-00813 WHO<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 13, 2014, I SERVED a true and correct copy of the attached, by placing said copy in a postage paid envelope addressed to the person hereinafter listed, by depositing said envelope in the U.S. Mail.


Kevin L. Hopkins
V76611
CSP-Solano II
P.O. Box 4000
Vacaville, CA 95696-4000


Dated: March 13, 2014

　　　　　　　　　　　　　　　　　　Richard W. Wieking, Clerk
　　　　　　　　　　　　　　　　　　　By: Jean Davis, Deputy Clerk